*448 OPINION OF THE COURT
Rolando T. Acosta, J.
Introduction
This case presents the novel issue of whether a party can defeat a properly pleaded account stated cause of action in an attorney-client relationship by claiming that the legal fees were excessive pursuant to Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11) and, therefore, rendering the agreement to pay the outstanding fees illegal and unenforceable. This issue arose in the context of fees incurred in a hotly-contested custody dispute between a wealthy and prominent artist and his equally prominent wife, an Italian citizen involved in politics and pornography.
Background
In October 1993, defendant Koons, a prominent artist, hired plaintiff law firm Paul Weiss to represent him in his divorce from his wife, Ilona Staller, an Italian citizen, who maintained an apartment in Rome in addition to New York City, and to obtain custody of their infant son. The custody issue, much of which revolved around the extent to which each party engaged in pornography, became extremely complicated as it was litigated in both Rome and New York City and involved both parents removing their child to foreign jurisdictions against explicit court orders (defendant in December 1993 and Staller in June 1994).
In January 1994, a justice of this court signed a stipulation and order directing that neither party shall remove the child from the State of New York or from his New York residence except when accompanied by a security guard. As a result, defendant hired United Security, a security firm, to provide security guards. In mid-June 1994, Staller evaded the security guards and removed the child to Italy.
In December 1994, after extensive litigation during which defendant instructed Paul Weiss to “leave no stones unturned” and to work “full-speed-ahead in every front that could be pursued,” defendant was granted a divorce in New York and was awarded sole custody. For the next four years, the divorce and custody issues were relitigated in the Italian courts, where defendant was granted a divorce and sole custody. The custody aspect of the award was eventually reversed on appeal and Staller granted custody. Although defendant had Italian counsel in Italy, plaintiff law firm worked with Italian counsel at defendant’s request.
*449 A series of letters from defendant to Paul Weiss chronicle defendant’s noble desire that Paul Weiss use every means at their disposal to regain custody of defendant’s son, including communicating with the then President of the United States. (See Veisz affidavit, exhibits 21-22, 25.) As a result, Paul Weiss made contact with the Assistant Secretary of State, the United States Ambassador to Italy, federal prosecutors, and members of Congress in defendant’s efforts to have his son brought back to the United States.
From 1993 to 1999, plaintiff billed defendant a total of $3,942,024.95, primarily as a result of this seemingly endless litigation at defendant’s behest. This total included $3,362,794 for the matrimonial litigation, $179,500 for an unrelated 1995 copyright matter, and $399,730.95 in disbursements. Defendant paid his first 16 monthly bills on time, and although he then started to pay his bills more erratically, he never objected to the monthly bills. In fact, in 1994, when his debt had grown to $951,620.47 and plaintiff requested prompt payment, defendant, through his assistant, offered his valuable artwork as collateral for the debt. When plaintiff declined the collateral, defendant made two payments for $100,000 each. In 1995, defendant made payments in April, June and September, totaling $400,000, and has not made any payment since then. Defendant paid a total of $2,064,207.73.
As of October 12, 1995, defendant’s outstanding debt totaled $1,510,096.98. In response to plaintiffs request that defendant memorialize his oral assurances in writing, defendant signed a letter on November 2, 1995, stating that he believed the bills to be “fair and reasonable” and that he intended to pay the outstanding bills eventually. Defendant also acknowledged his debt to plaintiff in both his “accounts payable” list of Jeff Koons Productions, Inc., in 1994 and 1995, and in interrogatory answers and deposition testimony. As of the filing of the instant motion, defendant still had an outstanding debt to plaintiff of $1,877,818.22.
Summary Judgment and the Account Stated Doctrine
It is well settled that the proponent of a motion for summary judgment must establish that “there is no defense to the cause of action or that the cause of action or defense has no merit” (CPLR 3212 [b]) sufficiently to warrant the court as a matter of law to direct judgment in his or her favor. (Bush v St. Clare’s Hosp., 82 NY2d 738, 739 [1993]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) This standard requires *450 that the proponent of the motion “tender[ ] sufficient evidence to eliminate any material issues of fact from the case” (Winegrad at 853) by “evidentiary proof in admissible form.” (Zuckerman v City of New York,, 49 NY2d 557, 562 [1980].) Thus, the motion must be supported “by affidavit [from a person having knowledge of the facts], by a copy of the pleadings and by other available proof, such as depositions.” (CPLR 3212 [b].)
Where the proponent of the motion makes a prima facie showing of entitlement to summary judgment, the burden shifts to the party opposing the motion to demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action, or to tender an acceptable excuse for his or her failure to do so. (Vermette v Kenworth Truck Co., 68 NY2d 714, 717 [1986]; Zuckerman v City of New York, supra, 49 NY2d at 560, 562.) Like the proponent of the motion, the party opposing the motion must set forth evidentiary proof in admissible form in support of his or her claim that material triable issues of fact exist. (Id. at 562.)
In the present case, plaintiff has established a prima facie claim under the account stated doctrine and has established that defendant has no valid defenses to the claim. “An account stated is an agreement between the parties to an account based upon prior transactions between them with respect to the correctness of the separate items composing the account and that balance due, if any, in favor of one party or the other.” (Chisholm-Ryder Co. v Sommer & Sommer, 70 AD2d 429, 431 [4th Dept 1979].) “In order to establish an account stated, there must be a debtor and creditor relationship between the parties as to the items forming the account. Thus, an account stated may exist between an attorney and client.” (1 NY Jur 2d, Accounts and Accounting § 11, at 179-180.) An implicit agreement to pay, warranting summary judgment, will arise from either the absence of any objection to a bill within a reasonable time or a partial payment of the outstanding bills. (Chisholm-Ryder Co. v Sommer & Sommer, 70 AD2d 431, 433, supra.) Of course, an account stated may also be an explicit promise to pay the outstanding bills. (Id.; see also, Morrison Cohen Singer & Weinstein v Ackerman, 280 AD2d 355, 356 [1st Dept 2001]; Fred Ehrlich, P.C. v Tullo, 274 AD2d 303, 304-305 [1st Dept 2000]; Shea & Gould v Burr, 194 AD2d 369, 370-371 [1st Dept 1993].)
Here, as plaintiff argues in its moving papers, it is entitled to summary judgment on all three grounds. Specifically, defendant never objected to the bills within a reasonable time, made partial *451 payments, and even explicitly promised to pay the outstanding balance of the debt. Indeed, defendant does not contest the validity of the account stated doctrine. Instead, defendant argues that the account stated in this case should not be upheld by this court because the gross excessiveness of the fees makes the agreement illegal and, therefore, unenforceable.
In support of his position, defendant cites Code of Professional Responsibility DR 2-106 (22 NYCRR 1200.11), which states that a lawyer shall not charge an illegal or excessive fee. Thus, in Chisholm-Ryder Co. v Sommer & Sommer, defendant notes, the Court held that the agreement implied under the account stated doctrine is conclusive “[i]n the absence of fraud, mistake or other equitable consideration.” (70 AD2d at 431.) Defendant also relied, inter alia, on affirmations from two matrimonial law experts who affirmed that plaintiffs bills were so high as to be excessive within the meaning of DR 2-106.
Defendant’s position notwithstanding, there is no issue of fact created by defendant’s attempt to minimize or trivialize through experts the nature of the underlying dispute. The underlying litigation, albeit with the noble intent of protecting his child, was nevertheless an extravagant effort of defendant through a top-notch law firm to control and dictate the terms of the dispute with defendant’s former wife. Such extravagance is costly.
It is undisputed that defendant told plaintiff law firm, in essence, to do whatever it had to do to achieve the desired result. While plaintiff is not relieved of its ethical obligation to charge a reasonable fee (see Code of Professional Responsibility DR 2-106 [22 NYCRR 1200.11]), the fact is that no such issue has been raised. Defendant is not alleging that plaintiff charged an unreasonable hourly fee to have associates, for instance, watch pornographic videos, a necessary part of preparing to litigate the underlying custody dispute between defendant and his former wife. Instead, defendant is asking this court to make a policy determination that the amount incurred as a result of this litigation was unethical as a matter of law. To accomplish this, defendant, consistent with prior conduct to retain plaintiff, has now hired two very able and respected experts in the field of matrimonial law to raise issues of fact with respect to the adequacy and extravagance of the litigation. This court, however, will not police the conduct of wealthy litigants who choose to share their wealth with counsel through extravagant litigation.
Defendant’s contention to the contrary, this was no simple dispute. While Monday morning quarterbacking may lead to *452 questions of tactic and utilization of staff by plaintiff, the fact is that defendant never objected to the bills nor the tactics which generated such hefty bills. Indeed, defendant encouraged such tactics. Nor, does defendant’s belated oral complaints (that he told a Paul Weiss partner that the bills were “too much” and were “wiping” him out) raise an issue of fact inasmuch as defendant’s own written letters and actions refute his current recollection. (See Morrison Cohen Singer & Weinstein v Ackerman, supra, 280 AD2d at 356 [in deposition testimony, defendant made no specific objections of any kind about the invoices, but instead proffered a general complaint that the bills were mounting and that she could not afford to pay them].)
Under these circumstances, this court will not ignore the account stated doctrine. Defendant never objected to the bills, acknowledged in writing that they were fair and reasonable, and explicitly promised to pay them. Defendant, having litigated this same issue before in a different matter, is no novice when it comes to attorney fee litigation.* Accordingly, plaintiffs request for summary judgment is granted.
[Portions of opinion omitted for purposes of publication.]

 (See Petition for Adjudication of Rights of Wright Manning Rips & Maloney, 1994 WL 88023, 1994 US List LEXIS 2841 [SD NY, Mar. 11, 1994] [where law firm sought summary judgment based on account stated doctrine for fees generated in the appeal of Rogers v Koons, 960 F2d 301 (2d Cir 1992), as well as other related representation].) Significantly, in Adjudication of Rights of Wright Manning Rips & Maloney, the court noted that the recipient of a legal bill was “bound to examine it” and to “object to the accounts within a reasonable time” to prevent them from becoming “binding on both parties.” (1994 WL 88023, *4, 1994 US Dist LEXIS 2841, *11.) Thus, defendant was familiar with the account stated doctrine within months of hiring Paul Weiss.